# Exhibit 1

 **Wolters Kluwer**

**CT Corporation**
**Service of Process Notification**
03/30/2026
CT Log Number 551782692

## Service of Process Transmittal Summary

**TO:**   Legal Process Shared
U.S. Bancorp
U.S. BANCORP CENTER, 800 NICOLLET MALL
MINNEAPOLIS, MN 55402-

**RE:**   **Process Served in Delaware**

**FOR:**   U.S. Bancorp  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | ALEXA DANIELLE MATEO vs. BENEFICIAL STATE BANK |
| **DOCUMENT(S) SERVED:** | Summons, Complaint |
| **COURT/AGENCY:** | Kings County Civil Court, NY<br>Case # 986 |
| **NATURE OF ACTION:** | Violations of the Fair Credit Reporting Act |
| **PROCESS SERVED ON:** | The Corporation Trust Company, Wilmington, DE |
| **DATE/METHOD OF SERVICE:** | By Non-Traceable Mail on 03/30/2026 postmarked: "Not Post Marked" |
| **JURISDICTION SERVED:** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after proof of service |
| **ATTORNEY(S)/SENDER(S):** | Paul Camarena<br>26 Court St., No. 409<br>Brooklyn, NY 11242<br>312-493-7494 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 03/31/2026, Expected Purge Date: 04/05/2026<br><br>Image SOP<br><br>Email Notification,  Legal Process Shared  legal.process@usbank.com |
| **REGISTERED AGENT CONTACT:** | The Corporation Trust Company<br>1209 Orange Street<br>Wilmington, DE 19801<br>8775647529<br>MajorAccountTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT



**CT Corporation**
**Service of Process Notification**
03/30/2026
CT Log Number 551782692

disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

**IN THE NEW YORK CITY
CIVIL COURT
KINGS COUNTY
CIVIL DIVISION**

|  |  |
|---|---|
| *ALEXA DANIELLE MATEO,*<br>        Plaintiff,<br><br>        *vs.*<br>*BENEFICIAL STATE BANK,*<br>*U.S. BANCORP d/b/a ELAN FINANCIAL SERVICES,*<br>*EQUIFAX INFORMATION SERVICES L.L.C.,*<br>*EXPERIAN INFORMATION SOLUTIONS, INC.,*<br>*and TRANS UNION (OF DELAWARE), L.L.C.,*<br>        Defendants. | ) Index Number:            **986**<br>)<br>) *Summons*<br>)<br>) Plaintiff's Residence<br>) Address: 265 Hackensack St #115<br>)        Wood-Ridge, NJ 07075<br>)<br>)<br>) The basis of the venue designated is:<br>) Civil Practice Law & Rules Section 509,<br>) which is the county designed by the plaintiff. |

To the above named Defendants:

Beneficial State Bank
c/o Registered Agent
Richard H. Harvey
1438 Webster St., Suite 300
Oakland, CA 94612

U.S. Bancorp
c/o Registered Agent: The Corp. Trust Co.
Corporation Trust Center
1209 Orange St.
Wilmington, DE 19801

Equifax Information Services L.L.C.
c/o Registered Agent:
Corporation Service Company
80 State Street
Albany, NY 12207

Experian Information Solutions, Inc.
c/o Registered Agent:
CT Corporation System
28 Liberty Street, Floor 42
New York, NY 10005

Trans Union (of Delaware), LLC
c/o Registered Agent:
Corporation Service Company
80 State Street
Albany, NY 12207

YOU ARE HEREBY SUMMONED to appear in the Civil Court of the City of New York, County of Kings at the office of the Clerk of the said Court at 141 Livingston Street, Room 303, Brooklyn, NY 11201 in the County of Kings City and State of New York, within the time provided by law as noted below and to file your answer to the annexed complaint with the Clerk; upon your failure to answer, judgment will be taken against you for the sum of $ 50,000 per cause of action, with interest thereon from the 23rd day of March 2026, together with the costs of this action.

Dated, the 17th day of March 2026

_____
Clerk

or      _____
Attorney(s) for Plaintiff
Paúl Camarena, Esq.
26 Court St., No. 409
Brooklyn, NY 11242
(312) 493-7494
paulcamarena@paulcamarena.com
NY Atty Reg No: 3991981

**FILED**

**MAR 2 0 2026
CIVIL COURT
KINGS COUNTY**

NOTE: The law provides that:

(a) if this summons is served by its delivery to you personally within the City of New York, you must appear and answer within TWENTY days after such service; or

(b) if this summons is served by delivery to any person other than you personally, or is served outside the City of New York, or by publication, or by any means other than personal delivery to you within the City of New York, you are allowed THIRTY days after the proof of service thereof is filed with the Clerk of this Court within which to appear and answer.

**IN THE NEW YORK CITY
KINGS COUNTY
CIVIL COURT
CIVIL DIVISION**

| | |
|---|---|
| *ALEXA DANIELLE MATEO,*<br>     Plaintiff, | )<br>)<br>) |
| *vs.* | )<br>) |
| *BENEFICIAL STATE BANK,*<br>*U.S. BANCORP d/b/a ELAN FINANCIAL SERVICES,*<br>*EQUIFAX INFORMATION SERVICES L.L.C.,*<br>*EXPERIAN INFORMATION SOLUTIONS, INC.,*<br>*and TRANS UNION (OF DELAWARE), L.L.C.,*<br>     Defendants. | )<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff Alexa D. Mateo, by her counsel Paúl Camarena, respectfully complains as follows:

### Introduction.

1)    Pursuant to the United States Fair Credit Reporting Act's regulatory scheme, when consumer information is reported by a creditor to a credit reporting agency, the consumer can exercise a right to dispute that information.  The creditor (or "Credit Data Furnisher") must then reasonably investigate that information and the credit reporting agency (or "C.R.A.") must reasonably re-investigate that same information.  If the Credit Data Furnisher's investigation or the C.R.A.'s re-investigation does not verify that information, the Credit Data Furnisher and the CRA must delete that information off all credit reports on the consumer.

2)    In the instant case, Credit Data Furnishers Beneficial Bank and U.S. Banc reported inaccurate information about Plaintiff Alexa Mateo to CRA's; and Plaintiff Ms. Mateo repeatedly disputed Credit Data Furnishers' inaccurate information to Equifax, Experian, and TransUnion.

3)      However, the Defendant Credit Data Furnishers repeatedly failed to reasonably investigate their own inaccurately reported information, and the Defendant CRA's repeatedly failed to reasonably re-investigate that same information, much less delete it off credit reports on Ms. Mateo.

4)      The Defendant Credit Data Furnishers' reported information about Ms. Mateo was inaccurate, and the Defendant CRA's included that inaccurate information in their credit reports on Ms. Mateo.  That said, the U.S. Fair Credit Reporting Act mandated the Defendants to perform reasonable investigations and re-investigations, and each Defendant's failure to reasonably investigate or re-investigate was *per se* a violation of the U.S. F.C.R.A., regardless of whether any Defendant's information was inaccurate.  *Spokeo v. Robins*, 578 U.S. 330, 136 S. Ct. 1540, 1550 (2016) ("On the one hand, Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk.  On the other hand, [ a] ***violation*** of one of the FCRA's procedural requirements may result in no harm.  For example, even if a credit reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate.") (emphasis added) (dismissing FCRA claim because the FCRA violation did not result in any harm or a case or controversy as required by Article III of the U.S. Constitution.  However, "the constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability even when they address issues of federal law, as when they are called upon to interpret the Constitution or, in this case, a federal statute." *Asarco v. Kadish*, 490 U.S. 605, 617 (1989)).

## **Jurisdiction.**

5)      The FCRA, at 15 U.S.C. §§ 1681n and o, states that "[a]ny person who is negligent in failing to comply" or "who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer." The FCRA, at 15 U.S.C. § 1681p, also states that an "action to enforce any liability created under this subchapter may be brought in any … court of competent jurisdiction."

6)      The New York City Civil Court Act, at Section 202, states that the N.Y.C. Civil "[C]ourt shall have jurisdiction of actions and proceedings for the recovery of money ... where the amount sought to be recovered or the value of the property does not exceed $50,000." The NYC C.C.A. Section 211 additionally states that, "[w]here several causes of action are asserted in the complaint and each of them would be within the jurisdiction of the court if sued upon separately, the court shall have jurisdiction of the action [and i]n such case judgment may be rendered by the court in excess of $50,000." *See also, Metrotran Advertising v. Cado Transportation*, 156 Misc. 2d 725, 727, 601 N.Y.S.2d 684, 684, 1993 N.Y. Misc. LEXIS 347, *4 (NYC Civ. Ct. - Kings County 1990) ("the claim for attorney's fees is a separate cause of action").

7)      Ms. Mateo seeks to recover no more than $50,000 per cause of action and, thus, this Court has jurisdiction over this action.

## Parties.

8)      Plaintiff Ms. Mateo is a natural person and, thus, is a "consumer" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(c).

9)      Defendant Beneficial State Bank is a Corporation and, thus, is a "person" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(b) (" 'person' means any … entity ") and, hence, Defendant Beneficial Bank was required to "conduct an investigation with respect to the disputed information" pursuant to 15 U.S.C § 1681s-2(b)(1)(A).

10)     Defendant U.S. Bancorp is a Corporation and, thus, is a "person" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(b) (" 'person' means any … entity ") and, hence, Defendant U.S. Banc was required to "conduct an investigation with respect to the disputed information" pursuant to 15 U.S.C § 1681s-2(b)(1)(A).

11)     Defendant Equifax regularly assembles consumer credit information for the purpose of furnishing credit information and, thus, is a "consumer reporting agency" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(f).

12)     Defendant Experian regularly assembles consumer credit information for the purpose of furnishing credit information and, thus, is a "consumer reporting agency" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(f).

13)     Defendant TransUnion regularly assembles consumer credit information for the purpose of furnishing credit information and, thus, is a "consumer reporting agency" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(f).

**Factual Allegations.**

" Date of First Delinquency "

14)     Within the FCRA regulatory framework, the "Date of First Delinquency" is critically important because "under the FCRA, the account can only stay on record up to seven years following the date of first delinquency." *Ayala v. Experian*, 2024 U.S. Dist. Lexis 56215, \*3, 2024 WL 1328827, \*1, 22 cv 4935 (N.Dist. Ill. March 28, 2024) (emphasis added). *See also*, *Hadden v. University Accounting Services*, 2021 U.S. Dist. Lexis 272134, \*17, 2021 WL 12297785, 18 cv 81385 (S.D. Fl. April 20, 2021) ("Failure to report accurately this date is material, since the date of first delinquency report drives a CRA's calculation of the date on which the debt 'ages out' and must be dropped from the report (generally seven years from the DOFD).") (emphasis added); *Gillespie v. Equifax*, 2008 U.S. Dist. Lexis 85150, 2008 WL 4316950, 05 cv 138 (N.Dist. Ill. September 15, 2008) ("the date of first delinquency is the proper anchor date for calculating the seven-year statutory period during which it is permissible to report a delinquent account" and "Equifax further states that the purge date for a particular account is, in fact, determined by the date of first delinquency") (emphasis added); *How Long Does Information Stay on My Equifax Credit Report?*, Equifax Website (noting that "late payments remain on a credit report for up to seven years from the original delinquency date"), available at https://www.equifax.com/personal/ education/credit/report/articles/-/learn/how-long-does-information-stay-on-credit-report/ (emphasis added).  Thus, Equifax's own consumer disclosures state that "negative information ... can remain on [a consumer's] credit reports for up to seven years from the date [the consumer] first miss[es] a payment."  Hence, the more recent the "Date of First Delinquency," the longer the delinquency will remain on a credit report.

15)     Thus, the FCRA at 15 U.S.C. "§ 1681s-2(a)(5)(A) requires [credit data] furnishers to provide the date of first delinquency," *Seamans v. Temple*, 901 F. Supp. 2D 584, 594 (E.D.Pa. October 25, 2012);  and this Subsection 1681s-2(a)(5)(A) specifically states that the credit data furnisher "shall ... notify the [credit reporting] agency of the date of delinquency on the account, which shall be the month and year of the <u>commencement of the delinquency</u>."  (Emphasis added.)  Also, "the Federal Trade Commission[, ] up until July 26, 2011, regulated the implementation of the FCRA; since that date, the Consumer Financial Protection Bureau has regulated its implementation," *Lamson v. EMS*, 868 F. Supp. 2d 804, 817, 2012 U.S. Dist. Lexis 51417, *35, 2012 WL 1231907 (E.D.Wi. 2012);  and the Consumer Financial Protection Bureau has confirmed that "the date of first delinquency provided by a [credit data] furnisher must reflect the month and year on which the delinquency being reported <u>commenced</u>." *CFPB Advisory Opinion*, 87 FR 64689, 64691 (Vol. 87, No. 206) (Oct. 26, 2022) (emphasis added), available at https://www.federalregister.gov//documents/ 2022/10/26/2022-23264/fair-credit-reporting-facially-false-data#footnote-23-p64691 .  The Federal Trade Commission has additionally confirmed that credit data furnishers should "treat[ the] 'commencement' of the delinquency as the **first missed payment** -- not some later date that would further extend the period."  FTC Staff Opinion Letter – Johnson – August 31, 1998 (emphasis added), available at https://www.ftc.gov/legal-library/browse/advisory-opinions/ advisory-opinion-johnson-08-31-98 .

16)     Also, a more recent "Date of First Delinquency" conveys that the financial delinquency is newer, and newer financial delinquencies cause credit scores to decrease more. *See, e.g., In re Anzaldo*, 612 B.R. 205, 212 (Bankr. S.D. Cal. 2020) ("reporting newer negative late payment information would lower the consumer's credit score"); Equifax Website (noting that one of "the most significant factors for why [a credit] score was not higher" is that the "time since delinquency is too recent"), available at https://assets.equifax.com/legacy/pdfs/corp/EFS-659-ADV_BPR.pdf ; *CFPB Advisory Opinion*, 87 FR 64689, 64691 (Vol. 87, No. 206) (Oct. 26, 2022) (noting that "a Date of First Delinquency that is more recent than the start of a delinquency may lead a report user to believe a consumer had financial difficulty more recently than is the case"), available at https://www.federalregister.gov //documents/2022/10/26/2022-23264/fair-credit-reporting-facially-false-data#footnote-23-p64691 .

**Credit Data Furnisher Beneficial Bank's Inaccurate Reporting to Equifax About
Ms. Mateo's Account's " Date of First Delinquency ."**

17)     Ms. Mateo opened a credit card account with Beneficial Bank several years ago. However, Ms. Mateo struggled to pay her account on time.  Thus, Ms. Mateo's account payments became delinquent by November 2022 and her account payments were delinquent by at least 60 days in January 2023.

18)     Beneficial Bank properly reported to Equifax that Ms. Mateo's account payments were delinquent by at least 60 days in January 2023.  However, Beneficial Bank inaccurately reported to Equifax that Ms. Mateo's account's "Date of First Delinquency" did not occur until January 3, 2023; and Beneficial Bank's inaccurate information was parroted in Equifax's credit reports on Ms. Mateo.

19)     Beneficial Bank and Equifax's inaccurate reporting about Ms. Mateo's account's "Date of First Delinquency" risks illegally extending "the date on which the debt 'ages out' and must be dropped from the report." *Hadden v. University Accounting*, 2021 U.S. Dist. Lexis 272134, *17, 2021 WL 12297785, 18 cv 81385 (S.D. Fl. April 20, 2021) cited *supra,* ¶ 14.  Beneficial Bank and Equifax's reporting also inaccurately conveys that Ms. Mateo's financial delinquency occurred more recently than it actually did and, thus, Beneficial Bank and Equifax are illegally causing Ms. Mateo's credit score to further decrease.  *Supra,* ¶ 16 (*In re Anzaldo*, 612 B.R. 205, 212 (Bankr. S.D. Cal. 2020) ("reporting newer negative late payment information would lower the consumer's credit score")).

20)     Hence, Ms. Mateo repeatedly disputed Beneficial Bank's inaccurate reporting about her account's "Date of First Delinquency" to Equifax.  In Ms. Mateo' repeated disputes, Ms. Mateo specifically explained that "Beneficial Bank and Equifax reporting, on this credit report, that this account's 'Date of First Delinquency' was on '01/03/2023' is inaccurate and directly contradicted by Beneficial Bank and Equifax reporting, on this exact same credit report, that this exact same account was at least 60 Days Past Due in this exact same month (which has only 31 days)."

21)     Ms. Mateo's repeated disputes also listed her telephone number and email address, and Ms. Mateo repeatedly requested Beneficial Bank and Equifax to contact her to investigate her disputes.

22)     Upon information and belief, Ms. Mateo's repeated disputes were forwarded to Beneficial Bank by Equifax.

23)     However, Defendants Beneficial Bank and Equifax never even bothered to attempt to contact Ms. Mateo to investigate her repeated disputes; Defendants Beneficial Bank and Equifax repeatedly failed to reasonably investigate or re-investigate their own inaccurately reported credit information or inaccurate credit reports; and Defendant Beneficial Bank continues to report its inaccurate information about Ms. Mateo's account to Defendant Equifax, which continues to include that same inaccurate information in its credit reports on Ms. Mateo.

Credit Data Furnisher U.S. Banc's Inaccurate Reporting to Equifax About
Ms. Mateo's Account's " Date of First Delinquency ."

24)    Ms. Mateo opened a credit card account with U.S. Banc several years ago.  However, Ms. Mateo struggled to pay her account on time, and Ms. Mateo's account payments became delinquent in April 2022.

25)    U.S. Banc properly reported to Equifax that Ms. Mateo's account payments had become delinquent.  However, U.S. Banc inaccurately reported to Equifax that Ms. Mateo's account's "Date of First Delinquency" did not occur until June 1, 2022; and U.S. Banc's inaccurate information was parroted in Equifax's credit reports on Ms. Mateo.

26)    U.S. Banc and Equifax's inaccurate reporting about Ms. Mateo's account's "Date of First Delinquency" risks illegally extending "the date on which the debt 'ages out' and must be dropped from the report." *Hadden v. University Accounting*, 2021 U.S. Dist. Lexis 272134, *17, 2021 WL 12297785, 18 cv 81385 (S.D. Fl. April 20, 2021) cited *supra,* ¶ 14.  U.S. Banc and Equifax's reporting also inaccurately conveys that Ms. Mateo's financial delinquency occurred more recently than it actually did and, thus, U.S. Banc and Equifax are illegally causing Ms. Mateo's credit score to further decrease.  *Supra,* ¶ 16 (*In re Anzaldo*, 612 B.R. 205, 212 (Bankr. S.D. Cal. 2020) ("reporting newer negative late payment information would lower the consumer's credit score")).

27)    Hence, Ms. Mateo repeatedly disputed U.S. Banc's inaccurate reporting about her account's "Date of First Delinquency" to Equifax.  In Ms. Mateo' repeated disputes, Ms. Mateo specifically explained that U.S. Banc d/b/a Elan Financial and Equifax reporting that her "account's 'Date of First Delinquency' was on '06/01/2022' is inaccurate and … [t]he actual account statements will confirm that the actual 'Date of First Delinquency' was before 06/01/2022."

28)    Ms. Mateo's repeated disputes also listed her telephone number and email address, and Ms. Mateo repeatedly requested U.S. Banc and Equifax to contact her to investigate her disputes.

29)    Upon information and belief, Ms. Mateo's repeated disputes were forwarded to U.S. Banc by Equifax.

30)    However, Defendants U.S. Banc and Equifax never even bothered to attempt to contact Ms. Mateo to investigate her repeated disputes; Defendants U.S. Banc and Equifax repeatedly failed to reasonably investigate or re-investigate their own inaccurately reported credit information or inaccurate credit reports; and Defendant U.S. Banc continues to report its inaccurate information about Ms. Mateo's account to Defendant Equifax, which continues to include that same inaccurate information in its credit reports on Ms. Mateo.

### American Express' Inaccurate Reporting About Ms. Mateo and Ms. Mateo's Disputes to Experian and to TransUnion.

#### American Express' Inaccurate Reporting About Ms. Mateo.

31)     In February 2022, Ms. Mateo personally guaranteed or co-signed a Limited Liability Company's business credit account with AmEx.  The following month, Ms. Mateo personally guaranteed or co-signed the Limited Liability Company's second business credit account with American Express.  The following year, the business' credit account payments became delinquent; AmEx inaccurately reported to Experian and to TransUnion that Ms. Mateo was individually responsible for those credit accounts; and AmEx's inaccurate reporting was parroted in Experian and TransUnion's credit reports on Ms. Mateo.

#### Ms. Mateo's Repeated Disputes to Experian and to TransUnion.

32)     Ms. Mateo repeatedly disputed AmEx's inaccurate reporting to Experian and to TransUnion, and her repeated disputes specifically stated that AmEx, Experian, and TransUnion "reporting [Ms. Mateo's] 'Responsibility' as 'Individual' is inaccurate because, even according to AmEx's records, [Ms. Mateo] was, at most, a personal guarantor or co-signer to these business accounts."

Experian and TransUnion's Repeated Failures to Investigate Ms. Mateo's Disputes.

33)    The FCRA requires credit reporting agencies to investigate consumer disputes and to forward those disputes to creditors, but only when "the consumer notifies the agency directly." 15 U.S.C. §§ 1681i(a)(1)(A) and 1681i(a)(2)(A) (emphasis added). In *Younger v. Experian*, 817 Fed. Appx. 862, 864, 2020 U.S. App. LEXIS 19170, *3, 2020 WL 3397848 (11th Cir. 2020), the consumer mailed a single dispute letter to Experian, and her dispute letter listed her "local return address on it" and included her "name, date of birth, address, and [the] last four digits of [her] social security number." However, that consumer's dispute letter "stated an incorrect account number" and "also mistakenly asked Experian in the letter to correct her Equifax credit report." *Id.* (emphasis added). Nevertheless, the court held that "no reasonable factfinder could find the [ ] letter's contents presented anything to suggest it was not 'from' Plaintiff [and that, thus, t]his letter triggered Experian's duty to conduct a reinvestigation, which Experian failed to do." *Id.*, 817 Fed. Appx. 862, 865, 2020 U.S. App. LEXIS 19170, *6 (internal brackets omitted).

34)    In the instant case, Ms. Mateo's repeated dispute letters to Experian and to TransUnion also listed her "local return address" and included her "name, date of birth, address, and the last four digits of her social security number." Ms. Mateo's repeated dispute letters additionally included the first five digits of her social security number and the correct account numbers. Further, Ms. Mateo's dispute letters were signed by her. Moreover, Ms. Mateo's dispute letters included her telephone number, email address, and passwords on file with Experian and with TransUnion, respectively. Finally, Ms. Mateo's dispute letters specifically stated that, "[i]f [Experian or TransUnion] has concerns regarding whether [Ms. Mateo] directly submitted these disputes, [Experian and TransUnion] can contact [Ms. Mateo directly] at [Ms. Mateo's] telephone number or email on file with" Experian or with TransUnion, respectively.

35)     Hence, "no reasonable factfinder could find the [ ] letter's contents presented anything to suggest it was not 'from' Plaintiff" and, thus, the "letter[s] triggered Experian[ and TransUnion]'s duty to conduct a reinvestigation, which Experian [and TransUnion] failed to do." *Younger v. Experian*, 817 Fed. Appx. at 864, 2020 U.S. App. LEXIS 19170, *3, 2020 WL 3397848. Defendants Experian and TransUnion also repeatedly failed to forward Ms. Mateo's disputes to AmEx for additional investigation, as required by the FCRA.

Defendant TransUnion's Repeated Failures to Note Ms. Mateo's Disputes.

36)     "Whether or not a consumer is disputing a debt is no minor matter … as this information will be used to determine the debtor's credit score." *Evans v. Portfolio Recovery*, 889 F.3d 337, 349, 2018 U.S. App. LEXIS 11372, *19-20, 2018 WL 2035315 (7th Cir. 2018).  More specifically, "a debt marked as disputed negatively impacts a credit score less than a debt that is not marked as disputed." *Wood v. Security Credit*, 126 F.4th 1303, 1310, 2025 U.S. App. LEXIS 1901, *11, 2025 WL 314383 (7th Cir. 2025).  Thus, a "defendant's decision to report [a] debt but not [a] dispute result[s] in a much lower credit score for [a] plaintiff than a report of both the debt and the dispute." *Lueck v. Bureaus, Inc.*, 2021 U.S. Dist. LEXIS 178592, *6, 2021 WL 4264368, 20 cv 2017 (N.D.Ill. September 20, 2021) (citations and internal brackets omitted).

37)     Hence, the FCRA, at Section 1681i(c), specifically states that "[w]henever a statement of a dispute is filed … the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed;" and a credit reporting agency's "[f]ailure to comply with § 1681i(c) is an independent basis for liability," *Chaitoff v. Experian*, 79 F.4th 800, 808 (7th Cir. 2023).  Nevertheless, despite Ms. Mateo's repeated statements of dispute, Defendant TransUnion repeatedly failed to note that AmEx's reported information about Ms. Mateo is disputed by her.

## Causes of Action.

Count One – As to Defendant Beneficial Bank's Failure to Reasonably Investigate.

38)     The Fair Credit Reporting Act, at 15 U.S.C § 1681s-2(b)(1)(A), states, in relevant part, that, "[a]fter receiving notice ... of a dispute with regard to the [ ] accuracy of any information provided by a person to a consumer reporting agency, the person shall [ ] conduct an investigation with respect to the disputed information." "[C]ourts have consistently concluded that § 1681s-2(b) should be read as requiring a 'reasonable' investigation." *Humphrey v. Navient Solutions*, 16 cv 370 (W.D. Wis. September 13, 2017) (string citations omitted), *rev'd on other grounds*, 759 F. App'x 484 (7th Cir. 2019) ("When a credit-reporting agency notifies a [furnisher] of a disputed debt, the [furnisher] must 'conduct an investigation with respect to the disputed information.' 15 U.S.C. § 1681s-2(b)(1)(A). Whether the furnisher's investigation is reasonable is a factual inquiry.").

39)     Defendant Beneficial Bank negligently or willfully violated Subsection 1681s-2(b)(1)(A) by negligently or willfully failing to conduct reasonable investigations with respect to information about Ms. Mateo that Defendant Beneficial Bank itself is reporting to a credit reporting agency.

<u>Count Two – As to Defendant U.S. Bancorp's Failure to Reasonably Investigate.</u>

40)    The Fair Credit Reporting Act, at 15 U.S.C § 1681s-2(b)(1)(A), states, in relevant part, that, "[a]fter receiving notice ... of a dispute with regard to the [ ] accuracy of any information provided by a person to a consumer reporting agency, the person shall [ ] conduct an investigation with respect to the disputed information." "[C]ourts have consistently concluded that § 1681s-2(b) should be read as requiring a 'reasonable' investigation." *Humphrey v. Navient Solutions*, 16 cv 370 (W.D. Wis. September 13, 2017) (string citations omitted), *rev'd on other grounds*, 759 F. App'x 484 (7th Cir. 2019) ("When a credit-reporting agency notifies a [furnisher] of a disputed debt, the [furnisher] must 'conduct an investigation with respect to the disputed information.' 15 U.S.C. § 1681s-2(b)(1)(A). Whether the furnisher's investigation is reasonable is a factual inquiry.").

41)    Defendant U.S. Bancorp negligently or willfully violated Subsection 1681s-2(b)(1)(A) by negligently or willfully failing to conduct reasonable investigations with respect to information about Ms. Mateo that Defendant U.S. Bancorp itself is reporting to a credit reporting agency.

## Count Three – As to Defendant Equifax's Failure to Reasonably Reinvestigate.

42)     The Fair Credit Reporting Act, at 15 U.S.C. § 1681i(a)(1)(A), states, in relevant part, that, "if the [ ] accuracy of any [ ] information [ ] in a consumer's file at a consumer reporting agency is disputed [ ] and the consumer notifies the agency [ ] the agency shall [ ] conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."

43)     Defendant Equifax negligently or willfully violated Subsection 1681i(a)(1)(A) by negligently or willfully failing to conduct reasonable reinvestigations into information regarding Ms. Mateo that is being reported by Defendants Beneficial Bank and U.S. Bancorp *d/b/a* Elan Financial.

### Count Four – As to Defendant Experian's Failure to Investigate.

44)     The Fair Credit Reporting Act, at 15 U.S.C. § 1681i(a)(1)(A), states, in relevant part, that, "if the [ ] accuracy of any [ ] information [ ] in a consumer's file at a consumer reporting agency is disputed [ ] and the consumer notifies the agency [ ] the agency shall [ ] conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."

45)     Defendant Experian negligently or willfully violated Subsection 1681i(a)(1)(A) by negligently or willfully failing to conduct any investigation into information regarding Ms. Mateo that is being reported by American Express.

### Count Five – As to Defendant Experian's Failure to Forward Dispute.

46)     The Fair Credit Reporting Act, at 15 U.S.C. § 1681i(a)(2)(A), states that when "a consumer reporting agency receives notice of a dispute from any consumer ... the agency shall provide notification of the dispute to any person who provided any item of information in dispute."

47)     Defendant Experian negligently or willfully violated Subsection 1681i(a)(2) by negligently or willfully failing to provide notice of Ms. Mateo's disputes to AmEx.

<u>Count Six – As to Defendant TransUnion's Failure to Investigate.</u>

48)     The Fair Credit Reporting Act, at 15 U.S.C. § 1681i(a)(1)(A), states, in relevant part, that, "if the [ ] accuracy of any [ ] information [ ] in a consumer's file at a consumer reporting agency is disputed [ ] and the consumer notifies the agency [ ] the agency shall [ ] conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."

49)     Defendant TransUnion negligently or willfully violated Subsection 1681i(a)(1)(A) by negligently or willfully failing to conduct any investigation into information regarding Ms. Mateo that is being reported by American Express.

<u>Count Seven – As to Defendant TransUnion's Failure to Forward Dispute.</u>

50)     The Fair Credit Reporting Act, at 15 U.S.C. § 1681i(a)(2)(A), states that when "a consumer reporting agency receives notice of a dispute from any consumer ... the agency shall provide notification of the dispute to any person who provided any item of information in dispute."

51)     Defendant TransUnion negligently or willfully violated Subsection 1681i(a)(2) by negligently or willfully failing to provide notice of Ms. Mateo's disputes to AmEx.

<u>Count Eight – As to Defendant TransUnion's Failure to Note Dispute.</u>

52)    The Fair Credit Reporting Act, at 15 U.S.C. § 1681i(c), states that "[w]henever a statement of a dispute is filed … the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed;" and a credit reporting agency's "[f]ailure to comply with § 1681i(c) is an independent basis for liability," *Chaitoff v. Experian*, 79 F.4th 800, 808 (7th Cir. 2023).

53)    Defendant TransUnion negligently or willfully violated Subsection 1681i(c) by negligently or willfully failing to note that AmEx's reported information about Ms. Mateo is disputed by her.

### Prayer for Relief.

WHEREFORE, Plaintiff Alexa D. Mateo respectfully prays that this Honorable Court will hold a trial by jury and that this Court will enter judgment in her favor, and against the Defendants, for her actual damages, for statutory damages, for reasonable attorney's fees and costs, and for punitive damages.

Respectfully submitted,
Plaintiff Alexa Danielle Mateo's Counsel
Paúl Camarena

Paúl Camarena, Esq.
26 Court St., No. 409
Brooklyn, NY 11242
(312) 493-7494
paulcamarena@paulcamarena.com
NY Atty Reg No: 3991981

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
LETTERSTREAM

Attorney P. Camarena
210 South Patrick Street
Alexandria VA 22314

0013639791000011
U.S. Bancorp
 c/o Registered Agent: The Corp. Trust Co.
Corporation Trust Center
1209 Orange St.
Wilmington DE 19801
USA

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
LETTERSTREAM

Attorney P. Camarena
210 South Patrick Street
Alexandria VA 22314

0013839791000011
U.S. Bancorp
c/o Registered Agent: The Corp. Trust Co.
Corporation Trust Center
1209 Orange St.
Wilmington DE 19801
USA

002   BCBOSFS 19801